## DANACE *v.* THE MAGNOLIA *et al.*

*(Circuit Court, E. D. Louisiana.  January 22, 1889.)*

1. ADMIRALTY—JURISDICTION—CONTRACTS.
    A contract to stow or load a vessel is not a maritime contract, and not enforceable in admiralty.
2. SAME—PLEADING AND PROOF.
    A libel charged that the tug M., through its master, and representing as well himself as the owners of said tug and M. Bros., applied to libelant for the use of libelant's barge, to load the same with merchandise, and a contract was made with defendant; that libelant desired to send with his barge her keeper, which was objected to by defendant as unnecessary and useless, and that said barge, while in the custody and control of defendant, being improperly and insecurely, negligently and carelessly loaded, sunk, and became a total loss to libelant. *Held*, that on the pleadings M. Bros. could be held liable only as owners or lessees of the tug M., and, the evidence showing that they were not such owners or lessees, no judgment could be given against them.

In Admiralty.  Libel for damages.  On appeal from district court.
Libel by Nicholas Danace against steam-tug Magnolia and Manson Bros.  The decision of the district court was in favor of libelant, and defendants appealed.

*Thos. Gilmore & Sons*, for appellants.

*W. S. Benedict*, for appellee.

PARDEE, J.  The libel was brought by the owner of the barge Mamie against the steam-tug Magnolia and the firm of Manson Bros., owners or lessees of said tug.  It charges, among other things, "that on the 16th day of December, 1887, the said tug Magnolia, through its master, and representing as well himself as the owners of said tug, and the firm of Manson Bros., of this district, applied to your libelant for the use and hire of said barge Mamie, to load the same with merchandise, that is, with 'salt,' in the course of its employment upon the navigable waters of this state, and the contract of hire was then and there made with said defendant at the rate of five (5) dollars per day, as per custom; that your

libelant desired to send with said barge Mamie, in said contract of hire, the keeper or watchman and general custodian of said barge Mamie, and same was objected to by defendant herein as unnecessary and useless; that said barge Mamie, while in the custody and control of the defendant, being improperly and insecurely, negligently and carelessly, loaded, sunk, and became a total loss to your libelant." Libelant prayed for due process against the steam-tug Magnolia, its master, owners, and due personal process against Manson Bros., and for judgment in the sum of $800. Manson Bros. answered, denying all liability, and particularly denying that they were the owners or lessees of the steam-tug Magnolia, and any privity or obligation of contract between them and the libelant. Thomas Forrester appeared, and claimed the tug as owner, and excepted to the libel, because therein was joined a suit *in rem* and *in personam*. Thereafter the exception came on to be heard, and the court ordered libelant to elect as to whether he would proceed *in rem* or *in personam*, and, in compliance therewith, libelant elected to proceed *in personam* against Manson Bros., defendants, with right reserved of action against said tug Magnolia, if necessary. This election, and the dismissal of the suit *in rem*, left a suit *in personam* against Manson Bros., as owners or lessees of the tug Magnolia.

The evidence in the case shows that Manson Bros. were neither the owners nor lessees of the tug Magnolia; that they had made no specific contract for the use of the tug Magnolia, nor made any contract for the use of the barge Mamie; but shows that they made a contract with one Mr. Leland to transport by the Mississippi river 2,600 quarter bags of salt, equal to about 65 tons in weight, from a landing at Jackson Square to their warehouse, opposite Washington street, all in the city of New Orleans. The said Leland was to furnish the necessary barge and tug. Manson Bros. were to pay $17 for the service and were to do the loading and unloading themselves. It further appears in the case that, for the purposes of the contract, Leland obtained from the libelant the use of his barge, worth about $400, and the use of the tug Magnolia; that the salt was loaded on the barge by Manson Bros., and the barge was towed up to the warehouse, arriving too late to unload that day. During the night the barge sunk, and was a total loss. The bulk of the evidence in the case was directed to the question as to whether the barge sunk because of defective loading, or because the barge was unseaworthy. It is very voluminous and conflicting. From my examination of it, I am disposed to concur with the district judge, who found that the barge sunk because it was improperly loaded. From this statement of the case it is easy to to be seen that there is not sufficient pleading here to hold Manson Bros. liable in any other capacity than that of owners or lessees of the tug Magnolia. As they were not the owners or lessees of the tug Magnolia, no judgment can be given against them on this state of the pleading. From the facts of the case it appears that the only contract that Manson Bros. made with anybody was to pay freight on delivery of the goods, and to load and unload the goods. As the barge sunk from improper loading, Manson Bros., if liable at all, are liable for improper loading

or stowage of the cargo. By the settled jurisprudence of this circuit, since the decision of Mr. Justice BRADLEY in the case of *The Ilex,* 2 Woods, 229, the contract to stow or load a vessel is not a maritime contract; and not enforceable in admiralty. Of course, if the contract, for the violation of which damages are sought, is not a maritime contract, the admiralty is without jurisdiction. Neither on his pleading nor on the facts of the case is libelant entitled to recover in admiralty. A decree will be entered in this case dismissing the libel herein against Manson Bros., with costs of both courts.